## SMITH v. THE CITY OF OSAGE.

1. **Adverse Possession: WHAT IS.** Where the owner 'of land conveyed it by a deed which was not acknowledged, but was recorded, and continued in possession of the land for a number of years, and then conveyed it to another party, who took and held possession thereunder, *held* that such possession by the second grantee was adverse to those claiming under the first deed.

2. **Cities and Towns: STREETS: DEDICATION: ESTOPPEL.** Where land was platted into blocks, lots, streets, alleys and a public square, but was never actually laid out or used as such, but remained in one body, and was so used and cultivated by the original proprietors and their grantees for more than thirty years, and

the city to which it belonged continuously subjected it to taxation as private property, *held* that the city was estopped to set up any claim to the streets, alleys·and public square. (See opinion for citations.)

*Appeal from Mitchell District Court.*—HON. JOHN C. SHERWIN, Judge.

FILED, MAY 15, 1890.

ACTION to quiet the title of plaintiff in certain lands. After a trial on the merits, a decree was entered in favor of plaintiff, as prayed for in his petition. The defendant appeals.

*L. M. Ryce*, for appellant.

*G. E. Marsh*, for appellee.

BECK, J.—I.  The plaintiff claims to hold the title to the land in controversy, and alleges that defendant sets up an adverse title thereto. The defendant in its answer alleges that the land in question was platted and laid off in lots, streets, alleys and a public square, and that the streets, alleys and public square were in that way dedicated to the public use. It is not claimed that defendant holds the title of any of the lots, and the only claim or interest it has is as a representative of the public, or as a municipal corporation having charge and control for the benefit of the public, of land dedicated to public use, as streets, alleys and public grounds. It does not appear that any of the lots laid off on the land in question have been sold, or that defendant is the representative of the owners of such lots, or the guardian of their interests. The plaintiff pleads various defenses to defendant's claim that a part of the land has been dedicated to the public use, and is held subject thereto. We find it necessary to consider but two defenses, as, in our opinion, the decision of the case turns thereon. Other defenses will not be stated nor considered in this opinion.

II. Plaintiff, in his answer to defendant's claim, pleads the statute of limitations as a defense to the action, alleging that he has been for thirty years in the actual, open and notorious possession of the land, which has been adverse to defendant, and the claim it sets up to the land. The facts, briefly stated, are these: Sarah E. Moore entered the land in 1854. In 1855 she united with her husband in conveying the land to Eaton and Jenkins for the purpose, expressed in the deed, of caus-. ing the land to be laid off into village lots by the grantees in the deed. It seems to be a deed with conditions creating a power and trust. This deed is not acknowledged. It was duly recorded. The owners of other tracts of land united with Eaton and Jenkins in laying off a large tract of land into village lots, and for that purpose caused a plat of the land to be filed showing lots, streets, alleys and a public square. This was in 1855. Objections are made to the regularity and sufficiency of the plat, and the act of dedication by the owners of the land, indorsed on the plat. Mrs. Moore continued in the possession of the land until 1871, when she conveyed it to one under whom plaintiff claims. Plaintiff now claims that he and his grantor, and those under whom they claim, have been in the actual, open and notorious possession of the land, claiming the title thereto against all men. It appears that the land has been used and cultivated as a part of a farm. The streets and alleys have never been opened, and the public square has not been occupied by the public, but has been in cultivation as a part of a farm. Plaintiff insists that he and those under whom he claims have been in adverse possession of the land, and that defendant's claim to the land is barred by the statute of limitations. Defendant maintains that, as plaintiff claims under Mrs. Moore by a subsequent conveyance, his title cannot be adverse to the city, whose claim is based upon a prior conveyance executed by her; that, as plaintiff's and defendant's title have a common source, from the same

1. ADVERSE possession: what is.

grantor, Mrs. Moore, plaintiff's title cannot be adverse to defendant's claim. We know no rule recognized in this state extending so far. If there were, no case of adverse holding could arise in this state, where all titles are derived from the government. No title not capable of being traced back to the government is valid here, for all titles have their origin in the government, which is often reached through fewer mean conveyances than were executed in this case. The rule which counsel presents, we think, cannot extend further than to exclude the doctrine of adverse holding from cases wherein the parties hold under the same title, these titles meeting in a common source, in such a manner as that one is held to be in subordination to, or dependent upon, the other, and not independent of, or in conflict thereto.

In the case before us, plaintiff's and defendant's title nowhere meet in a common source. It is true they are both traced to Mrs. Moore. Each party claims under a deed executed by her, but each insists that her deed under which the other claims is invalid, and does not pass title, and the party acquires no title under it. With the deeds executed by Mrs. Moore the conflict of title begins. The respective parties holding the titles originally under her deeds hold adversely, and in conflict with each other. It cannot be said that plaintiff does not hold adversely to defendant, because Mrs. Moore herself, while in possession of the land, would not be regarded as holding adversely to defendant. But the same cannot be said of her grantee under whom plaintiff claims. He entered upon the land under a title in conflict with defendant's claim, and held it adversely thereto. He held color of title, for his claim was based upon a deed valid in form, under which he entered and held the land. His possession thereto was adverse as to defendant. The public, whose right to the use and occupancy of the land is attempted to be established by defendant, as the representative of the public, bases it in this action upon the facts and doctrines of

the law above recited. *City of Pella v. Scholte*, 24
Iowa, 283; *Davies v. Huebner*, 45 Iowa, 574. *City of
Waterloo v. Mill Co.*, 72 Iowa, 437, is not in conflict
with these views.

II.   The defendant was not organized as a city until
1871, and has taken no steps to open the streets and

2. CITIES and
towns:
streets: dedi-
cation: estop-
pel.

alleys, or to secure the occupancy by the
people of the public square, but during all
the time has assessed the land, and levied
taxes thereon, and collected them.   Prior
to the incorporation of defendant as a city the plaintiff,
or those under whom he claims, paid the taxes.   Prior
to 1867 the land was sometimes taxed as lots, sometimes
described on the tax list according to the government
subdivisions, and the conveyances of the land described
it as lots, according to the plat.   The deed executed by
Mrs. Moore and her husband describes the land by the
congressional subdivisions, and also as lots, according
to the plat.   Subsequent to 1867 the land was described
upon the tax list by the government subdivisions.   The
public square and the streets and alleys were in this
manner subjected to taxation.   It does not clearly
appear for what years the corporation taxes were levied
and collected, but we think each year after the incorpo-
ration of the city in 1871, and certainly after 1876, it
levied and collected taxes upon the land, describing it
according to the government subdivisions.   Defendant
is charged by law with the control of the streets, alleys
and public grounds within its borders, and may vacate
them, and restore them to private use.   Code, sec. 464.
It may exercise the authority and power of taxation
over private property and land held by individuals.   It
does not exercise such power over streets, alleys and
public grounds within its limits.   In the case before us,
it has permitted plaintiff, and those under whom he
claims, to occupy the land, which has never been subject
to public use, and it levies and collects city taxes
thereon.   The law regards this as a declaration by its
acts that it holds no claim to the land, and as an aban-
donment of all claim to the public use of the lands.

The city may vacate streets and other public lands, and restore them to private owners by proper action. The same end may be attained by abandonment and non-use, and by taxation, and in other ways treating the land as private property. The city will be estopped to set up any claim to land to which the right of the public use has been abandoned by subjecting it to taxation as private property. *Simplot v. City of Dubuque*, 49 Iowa, 630. Upon this point see *Getchell v. Benedict*, 57 Iowa, 121; *Adams County v. Railway Co.*, 39 Iowa, 507; *Audubon County v. Emigrant Co.*, 40 Iowa, 460; *Austin v. Bremer County*, 44 Iowa, 155. We reach the conclusion that the action is barred by the statute of limitations, and that defendant is estopped to set up the claim of the public to the land in controversy. Other questions discussed by counsel need not be considered. The judgment of the district court is

AFFIRMED.